O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| St. Paul Mercury Insurance Co.,<br><br>Plaintiff,<br><br>vs.<br><br>RMG Capital Corp., et al.,<br><br>Defendants. | CASE NO. SACV 12-450-JST (MLGx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 10)** |

1

Before the Court is a Motion for Summary Judgment filed by Defendants Opus Bank, as successor in interest to Fullerton Community Bank ("Opus"), and RMG Capital Corporation ("RMG") (collectively, "Defendants"). (Mot., Doc. 10.) Plaintiff St. Paul Mercury Insurance Co. ("St. Paul") opposed the Motion (Opp'n, Doc. 17), and Defendants replied (Reply, Doc. 28). Having considered the briefing and supporting documentation submitted by the parties, having heard oral argument, and having taken the matter under submission, the Court GRANTS Defendants' Motion.

## I. BACKGROUND

St. Paul insured Defendants RMG, Opus, and Fullerton Community Bank ("FCB"), under the Select One Policy for Community Banks issued to RMG on September 25, 2008, for the policy period September 25, 2008, through September 25, 2011 (the "Policy"). (Defs.' Reply to Pl.'s Statement of Uncontroverted Facts ("SUF") ¶¶ 1-5, 6, Doc. 29.) The Policy provided several types of coverage, including a Bankers Professional Liability Insuring Agreement, which provided Lender Liability Coverage to Defendants. (*Id.* ¶ 9.) As a "claims made and reported policy," the Policy covered only claims first made during the policy period, which was subdivided into three "policy years" for claims reporting purposes. (*Id.* ¶¶ 7, 47.) In order to recover under the Lender Liability Coverage, the Policy's notice provisions required Defendants to "give to [St. Paul] written notice of any Claim made against the Insureds as soon as practicable, but in no event later than: (a) sixty (60) days after the expiration of the Policy year in which the Claim was first made . . . ." (*Id.* ¶ 8.) A "Claim" was defined as:

    (a) a written demand against any Insured for monetary damages or non-monetary relief;

    (b) a civil proceeding against any Insured commenced by the service of a complaint or similar pleading;

    (c) a criminal proceeding against any Insured commenced by a return of an indictment or information; [or]

2

>  (d) an arbitration proceeding against any Insured, or a formal administrative or regulatory proceeding against any Insured Person . . ., which shall be deemed commenced by such Insured's receipt of an arbitration petition, a notice of filed charges, a formal investigative order or a similar legal document . . ., or a written demand against such Insured for monetary damages or non-monetary relief . . . .

(*Id*. ¶ 11.)

On December 2, 2010, C.W.S., Inc. ("CWS") sued FCB in Orange County Superior Court (the "CWS Action"), asserting various claims stemming from FCB's alleged failure to perform under a construction loan agreement entered into between FCB and CWS (the "Construction Loan"). (*Id*. ¶¶ 13, 15-30.) On March 14, 2011, Defendants tendered their defense of the CWS Action to St. Paul under the Policy. (*Id*. ¶ 31.) St. Paul accepted coverage, subject to a reservation of rights. (*Id*. ¶¶ 14, 32, 71.)

On January 16, 2012, while the CWS Action was pending, Defendants disclosed to St. Paul a January 8, 2009 letter from CWS's attorney, Timothy Principe, to FCB regarding the Construction Loan (the "Principe Letter"). (*Id*. ¶¶ 36, 69.) The Principe Letter begins by setting forth CWS's understanding of the terms of the Construction Loan and FCB's agreement to extend the maturity date of the loan in exchange for a loan fee. (*Id*. ¶ 37; Compl., Ex. 3 at 1, Doc. 1.) It then expresses CWS's opinion that FCB breached the terms of the Construction Loan by failing to fund a draw on the loan and by refusing to fund the loan to the full principal amount. (SUF ¶ 40.) The Principe Letter concludes:

> In closing, the Bank has absolutely no legal basis to unilaterally limit the amount of available construction loan funds. C.W.S. accordingly demands that the Bank immediately confirm in writing that it will fund the remainder of the construction loan, as required pursuant to the terms of the [loan agreement].

(*Id*. ¶ 42; Compl., Ex. 3 at 2.)

In February 2012, after receiving notice of the Principe Letter, St. Paul advised Defendants of its intent to deny coverage with respect to the CWS Action because the Principe Letter constituted a "Claim" under the Policy that was not timely reported under the Policy's notice provisions. (SUF ¶¶ 33-35.) Thereafter, St. Paul filed the instant declaratory relief action seeking (1) a declaration that it is not obligated under the Policy to defend or to indemnify Defendants for defense costs or losses in connection with the CWS Action, and (2) reimbursement for defense costs advanced in the CWS Action. (*Id.* ¶¶ 43-44.)

## II. LEGAL STANDARD

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the parties do not dispute any facts underlying their coverage dispute, "the interpretation of an insurance contract and its application to undisputed facts are questions of law" appropriate for resolution on summary judgment. *Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co.*, 163 Cal. App. 4th 1387, 1391 (2008); *see also Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) ("[I]nterpretation of an insurance policy is a question of law.").[1]

## III. DISCUSSION

Defendants seek summary judgment in their favor regarding St. Paul's duties to defend and to indemnify Defendants in the CWS Action, and St. Paul's entitlement to

---

[1] The parties agree that California law governs their dispute. (Opp'n at 11.)

4

reimbursement of defense costs.  The parties agree that the resolution of each of St. Paul's claims depends only upon whether the Principe Letter constituted a "Claim" under the Policy.

Insurance policies are contracts to "which the ordinary rules of contractual interpretation apply." *Palmer*, 21 Cal. 4th at 1115.  Therefore, "the mutual intention of the parties at the time the contract is formed governs interpretation." *Id*.  The court infers the parties' intent, "[i]f possible . . . solely from the written provisions of the insurance policy.'" *Id*. (quoting *AIV Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990)).  In so doing, the court considers a policy's terms in context and "interpret[s] words . . . in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage." *Westrec*, 163 Cal. App. 4th at 1392; *see also Palmer*, 21 Cal. 4th at 1115.  "If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." *Westrec*, 163 Cal. App. 4th at 1392.

As set forth above, the Policy defined a "Claim" to include, inter alia, "a written demand against any Insured for monetary damages or non-monetary relief."  Because the parties concede that the Principe Letter did not seek monetary damages, the Principe Letter only constituted a "Claim" that triggered Defendants' reporting obligations under the Policy if it was a "written demand for non-monetary relief."  Based upon the plain meaning of the terms "demand" and "relief," and the context in which they are used in the Policy, it was not.

In the claims-based insurance context, California courts have determined that "[t]he ordinary meaning of a 'demand' . . . is a request for something under an assertion of right or an insistence on some course of action." *Westrec*, 163 Cal. App. 4th at 1392 (determining whether a letter was a "claim" under a claims-made insurance policy that defined a claim to include "a written demand for civil damages or other relief . . .").  "A mere request for an explanation, expression of dissatisfaction, or lodging of a grievance that falls short of such an insistence is not a demand." *Id*.

The parties have not directed the Court to a decision from any California court construing the term "relief" in the context of a claims-based insurance policy, and the Court has found none. In ordinary usage, "relief" has a wide variety of meanings that vary by the context in which it is used. *See Simke, Chodos, Silberfeld & Anteau, Inc. v. Athans*, 195 Cal. App. 4th 1275, 1286 (2011). As one court has recognized, "[d]ifferent primary meanings of the word would likely occur, for example, to a baseball pitcher, a sculptor, a headache sufferer, a military commander, and a lawyer." *Ctr. for Blood Research, Inc. v. Coregis Ins. Co.*, No. Civ.A 01-10708, 2001 WL 34088617, at *2 (D. Mass. Nov. 14, 2001). Accordingly, the Court assesses the plain meaning of "relief" by reference to the context in which it is used in the Policy. *See Palmer*, 21 Cal. 4th at 1115.

In this action, the Court is called upon to interpret the term "relief" in the context of lender liability coverage meant to insure Defendants against costs incurred during, and as a result of, formal or quasi-formal litigation. By definition, the Policy covered "losses" defined as "the amount which the Insureds become *legally obligated* to pay . . . including Damages, judgments, settlements and Defense Costs." (Compl., Ex. 2 at 64, emphasis added.) "Damages" were defined to include those traditionally associated with litigation, and "Defense Costs" included "reasonable costs, charges, fees (including attorneys' fees, experts' fees, and mediators' or arbitrators' fees) and expenses . . . incurred in defending or investigating a Claim." (*Id.* at 62.) Moreover, the definition of "Claim" itself specifically referred to civil, criminal, and arbitration proceedings. (SUF ¶ 11.) "In this context, the 'plain meaning' of 'relief' would fairly seem to be the meaning pertinent to such legal matters." *Ctr. for Blood Research, Inc.*, 2001 WL 34088617, at *2 (construing the term "relief" in a claims-based insurance policy); *see also Diamond Glass Co., Inc. v. Twin City Fire Ins. Co.*, No. 06-CV-13105(BSJ)(AJP), 2008 WL 4613170, at *4 (S.D.N.Y Aug. 18, 2008) (construing "relief" in a claims-based policy that defined a "claim" as a "written demand for monetary damages or non-monetary relief . . ."). Black's Law Dictionary defines "relief" as "[t]he redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court.—Also termed *remedy*." *Black's Law*

*Dictionary* (9th ed. 2009). Similarly, "remedy" encompasses "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief." *Id*.

Therefore, under the plain meaning of the Policy, a "Claim" only includes a demand—i.e., a request for something as a matter of right or insistence on a course of action—for "non-monetary relief" in the form of a court-ordered benefit. The Principe Letter does not fall within that definition. The only request advanced by CWS in the Principe Letter was that FCB confirm in writing its intent to perform under the terms of the Construction Loan as they were understood and summarized by CWS. In other words, it sought only return correspondence clarifying whether FCB agreed with CWS's interpretation of the Construction Loan.

In its Opposition, St. Paul argued that the Principe Letter was a "Claim" because "a demand for non-monetary relief simply is a demand for a party to do something." (Opp'n at 16, 18.) At oral argument, however, St. Paul conceded that a demand for a meeting or a return telephone call would *not* constitute a demand for non-monetary relief under the Policy. Rather, St. Paul argued that the Principe Letter should be interpreted as a demand for non-monetary relief because the letter was written by a lawyer, strongly referenced a belief that the contract had been breached, and essentially said, "tell me you're going to perform, or we're done." Its argument is unpersuasive for two reasons.

First, a strong statement of one's position is irrelevant to whether a demand for non-monetary relief has been made. Indeed, if whether a demand has been made depends upon the subjective zeal with which a third party communicates its position, the definition of "Claim" would be, at best, a moving target.

Second, the letter did not contain any such "or else" ultimatum. It did not state "agree to our interpretation or we will seek specific performance or an injunction." It expressed no entitlement to, or threat to seek, court-ordered relief of any kind. Accordingly, the Principe Letter was not a "written demand for non-monetary relief," and was, therefore, not a "Claim" under the Policy that triggered Defendants' reporting obligations.

7

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment. Defendants are ORDERED to submit a proposed judgment within ten days of the date of this Order.

DATED: June 7, 2012

_____
UNITED STATES DISTRICT JUDGE